AO 106 (Rev. 04/10) Application for a Search Warrant  *RAS*

FILED
APR 27 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  
*(Briefly describe the property to be searched or identify the person by name and address)*

white iPhone 6 Plus Cellular Telephone  
Model No. A1634  
FCC ID: BCG-E2944A

Case No. **18MJ2044**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with Intent to Distribute a Controlled Substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Vincenzo L. Zoni

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Vincenzo L. Zoni, HSI  
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/27/18

*Judge's signature*

City and state: San Diego, CA    Hon. Jan M. Adler, United States Magistrate Judge  
*Printed name and title*

I, Vincenzo L. Zoni, Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), being duly sworn, do hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device (hereinafter the **"Target Device"**), as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, as more particularly described in Attachment B:

    (1)    white iPhone 6 Plus Cellular Telephone
             Model No. A1634
             FCC ID: BCG-E2944A

This search supports an investigation and prosecution of Sandra Macias (MACIAS) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized from MACIAS by Customs and Border Protection Officers on December 14, 2017, when she was arrested at the Otay Mesa, California, Port of Entry (POE), attempting to smuggle methamphetamine into the United States. The **Target Device** was then turned over to HSI, who assumed custody of the **Target Device**. The **Target Device** is currently being held as evidence and remains in the possession of HSI at 880 Front St, San Diego, California 92101.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the item to be searched as described in Attachment A (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The

1

evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am currently a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") formerly known as the ICE Office of Investigations ("OI"). I have been employed by ICE OI/HSI as a SA since it was first created on March 1, 2003. From 2002-2003, I was a SA with a predecessor agency, the Immigration and Naturalization Service ("INS"). Prior to becoming a SA, I served as Border Patrol Agent with the United States Border Patrol (USBP) within INS from 1995-2002. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border. I have completed the USBP Basic Training Course at the Federal Law Enforcement Training Center located in Glynco, Georgia, as well as other follow-up courses required by ICE.

6. Since June of 2016, I have been assigned to the HSI Special Agent in Charge - Investigative Services Group as a liaison between HSI and the United States Attorney's Office for the Southern District of California. Prior to this assignment, I was assigned to the Deputy Special Agent in Charge San Ysidro ("DSAC"), located in San Ysidro, California. My specific assignment at the DSAC was to the Narcotics Response Group. During my tenure at the DSAC, my duties included investigating the illicit trafficking of controlled substances into the United States. During my assignment to the Narcotics Response Group, I have participated in the investigation of various Drug Trafficking Organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. Because the nature of my ongoing work with DHS, ICE, HSI requires that I keep apprised of recent

trends and developments involved in the investigations of drug traffickers, I regularly communicate with agents from the Drug Enforcement Administration, Customs and Border Protection ("CBP"), and other local and state law enforcement officers operating within the Southern District of California.

7. Also, by virtue of my employment as a Special Agent, I have performed various tasks which include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs; (b) interviewing witnesses, cooperating sources and sources of information relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs; and (c) functioning as a case agent, entailing the supervision of specific investigations involving the trafficking of drugs. Further, I have personally interviewed individuals involved in the distribution of illegal drugs and have consulted with other experienced investigators concerning the practices of drug-traffickers and the best methods of investigating them.

8. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in narcotics trafficking and controlled substance manufacture and distribution investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

3

    e.    Drug smugglers will use cellular telephones because they can easily arrange to meet co-conspirators and or potential buyers at predetermined locations.

    f.    Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    g.    Drug smugglers often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    h.    The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

4

a.  tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

c.  tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

d.  tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

11. On December 14, 2017, MACIAS applied for entry into the United States through the Otay Mesa, California, POE as the driver, sole occupant, and registered owner of a 2004 Chevy Venture. While speaking with the U.S. Customs and Border Protection Officer (CBPO) at the primary booth, a narcotics/human detector dog (NHDD) alerted to the passenger side door. MACIAS was escorted to the security office and the vehicle was referred to secondary inspection for further inspection.

12. While in secondary inspection, the vehicle was driven through the z-portal (x-ray) machine revealing anomalies within the driver and passenger side rear sliding doors.

5

13. Upon closer inspection of the driver and passenger side rear sliding doors quarter panels, CBP removed a total of 15 packages, weighing approximately 8.68 kilograms (19.13 pounds), of a crystal substance which field-tested positive for the properties of methamphetamine, a schedule II controlled substance.

14. Incident to her arrest, agents seized the **Target Device** from MACIAS. During her post-arrest interview, MACIAS confirmed that the **Target Device** belonged to her.

15. Then, on December 18, 2017, while CBPO Olsen and his assigned NHDD were conducting inspection operations in the seized vehicle lot, the NHDD alerted to Defendant's 2004 Chevy Venture. Following two searches by CBPOs Tobin and Maysonet, an additional 20 packages, which field-tested positive for the characteristics of methamphetamine, were removed from the front floorboard area of the vehicle and weighed approximately 11.28 kilograms (24.82 pounds).

16. Based upon my experience and investigation in this case, I believe that MACIAS, as well as other persons as yet unknown, were involved in an on-going conspiracy to facilitate the movement of narcotics into the United States and beyond. Further, based on my experience investigating narcotics traffickers, I believe that MACIAS used the **Target Device** to coordinate with co-conspirators regarding the manufacture, distribution and importation of federally controlled substances, and to otherwise further this conspiracy within the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the drug trafficking activities of MACIAS such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device** described herein.

17. Finally, I know that narcotics trafficking activities require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given these facts, I respectfully request permission to search the **Target Device** for the period of September 14, 2017, up to and including December 14, 2017.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually

and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, the **Target Device** will be collected and subjected to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

21. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that MACIAS used the **Target Device** to facilitate the offense of importing methamphetamine. Further, the **Target Device** was likely used to facilitate the offense by transmitting and storing data, which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

22. Because the **Target Device** was seized during the investigation of MACIAS' smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by MACIAS continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from September 14, 2017, up to and including December 14, 2017.

//
//
//
//

8

23. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the **Target Device,** as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Vincenzo L. Zoni, Special Agent
U.S. Homeland Security Investigations

Sworn to before me and subscribed in my presence
before me this ____27____ day of April, 2018

_____
The Honorable Jan M. Adler
United States Magistrate Judge

9

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

(1) white iPhone 6 Plus Cellular Telephone
Model No. A1634
FCC ID: BCG-E2944A
**(Target Device)**



**Target Device** is currently in the possession of Homeland Security Investigations located at 880 Front St, San Diego, California 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 14, 2017 up to and including December 14, 2017:

a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof;

d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of methamphetamine or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.